Bisseld, J.,
delivered the opinion of the court.
The*water supply of the city of Trinidad is furnished by the Trinidad waterworks. According, to the usual practice of cities and waterworks companies, hydrants were placed at various points, and in other ways water was furnished for the use of the municipality. From time to time, the company rendered bills to the city, which were passed on by the common council, which issued warrants on the treasury in payment. Only two lots of warrants are involved in this litigation. There were twenty-five, numbered from 5896 to 5920, for $500 each, issued in November, 1892, to The Trinidad Waterworks Company. This lot of warrants was turned over to F. D. Wight as security on some transaction between the company and other parties. There, was another series, seven in number, numbered from 6144 to 6150, issued in March, 1893, in liquidation of bills of the waterworks rendered to the city, which were purchased by the First National Bank of Central City, and held by them at the time this litigation started. The warrants were presented for payment, and, there being no funds in the treasury, were properly indorsed, to insure interest to the holder, and held until the latter part of 1894, when the holders demanded payment of the appellant, Fox, who was then the city treasurer. At the time of the demand -there was in the treasury $16,510.43 which was properly applicable to the liquidation of these claims. The treasurer refused payment. It seems there was some controversy between the Waterworks Company and the city respecting the terms and the performance of the contract, which led to a suit by the city against the company to cancel the warrants. The city failed in the suit, and prosecuted a writ of error to the supreme court, which is now pending. The disagreement led the city administration to resist the payment of these claims until the question at issue between the city and the corporation should be finally *403 determined. Whereupon the First National Bank of Central City instituted proceedings by way of mandamus, recited the issuance of the warrants, their title, the demand for payment, and the presence of funds in the treasury to pay the claims. About the same time, the Waterworks Company started similar proceedings on the twenty-five warrants which they held, alleging whatever was necessary to make out a case on paper. The proceedings were begun in Trinidad, but by stipulation both were removed to Arapahoe county, there consolidated and tried as one suit. Evidence was introduced to show the rendition of the bills to the city, their acceptance and allowance by the city government; the order of the council directing the warrants to issue; the issue and presentation for payment, with the requisite proof respecting the condition of the cit}' treasury. It was clearly shown there was money in the treasury applicable to the payment of such claims, and the treasurer, Fox, turned over to his successor $17,818.24. It will be assumed nothing was lacking in the proof to show the petitioners’ right to a writ, and the judgment directing it would of necessity be affirmed had it been duly entered against the proper parties. The trial disclosed the fact that Fox was not then city treasurer. He held the office at the time of the demand and the commencement of the proceeding. The relators, however, put him on the stand, and, so far as might be by that kind of testimony, proved that he had gone out of office on the 24th of April preceding, and had been succeeded by A. L. Branson, who was on the 7 th of May, 1895, the date of the hearing, then city treasurer of Trinidad. Fox testified to his proceedings when he went out of office, which included the turning over to his successor, Branson, of the specific fund which was alleged to be applicable to the payment of these claims.
The only reason which he gives for refusing to pay the warrants is found in his statement of the policy of the city government, which was to refuse to pay any of the Waterworks Company’s claims until the validity of these warrants should be finally settled by the supreme court in the litiga *404 tion which was then pending. On the conclusion of the testimony, the court being sufficiently advised, found the facts to be as stated in the petitions. There was likewise a finding that Fox’s term of office as treasurer had expired on the 23d of April, 1895, and that he had been succeeded by Branson, who was in fact the city treasurer of Trinidad at the time the judgment was rendered, and that he then held all the moneys in the water fund of the city. On this basis the court rendered judgment that a peremptory writ be issued, addressed to the defendant, John H. Fox, and to his successor, A. L. Branson, commanding them and each of them to pay the warrants described in the alternative writs from money in the water fund of the city in the order of their registration. No attempt was made to bring Branson into the litigation, notwithstanding it clearly appeared on the hearing that Fox was out of office and Branson in and in custody of the particular fund which was sought to be reached by these proceedings. The necessity of some judgment against Branson must have been apparent to the court and counsel, or the judgment would not have run against him. Why the writ was directed to issue as against Fox, who was shown not to have custody of the funds and to be unable to answer the judgment, is not apparent. According to our views of the law, the whole case turns upon what has just been stated respecting the judgment.
Service of process of some description, either actual or constructive, is by all courts held indispensable to the exercise of jurisdiction over the person. A constructive service may be sometimes as effectual to confer upon the court power to enforce its judgments as the actual service of a writ. If this be ever true, the present case presents none of the conditions essential to the application of the principle. These proceedings were by way of mandamus to compel the custodian of a particular fund to apply it to the satisfaction of warrants which the petitioners held. The existence of the fund was established. The regularity of the warrants cannot be questioned on this hearing, the title of the peti *405 tioners is not disputed, and it therefore follows the claimants were entitled to relief, and the only inquiry is whether they succeeded in giving the court jurisdiction to enforce that relief by the appropriate judgment. We recognize a ver}'- wide distinction between certain decisions of the supreme court of the United States and those of some state courts under analogous conditions. Wherever the duty to be performed is a personal one, and the thing is to be done on behalf of a corporation, over which the court may exercise jurisdiction, the supreme court undoubtedly holds the end of the officer’s term abates the suit which has been begun to enforce his .performance of the particular duty. It has accordingly been held in several well considered cases that since the government cannot be coerced, the official of that government who goes out of office is no longer subject to the operation of the writ of mandamus. The Secretary v. McGarrahan, 9 Wall. 298; United States v. Boutwell, 17 Wall. 604.
A. very broad distinction is recognized, even by that court, between eases where the duty is a personal one, and where it is to be performed in a representative capacity, and the person on whom the writ is served really stands as and for the corporation whose officer he is and whose duty may be termed a continuing one, and therefore enforceable as against the successor in office as well as against the individual towards whom the writ was originally directed. Commissioners v. Sellew, 99 U. S. 624; Thompson v. United States, 103 U. S. 480.
The courts of the different states do not as a rule recognize the distinction which is thoroughly settled in the federal jurisdiction by these adjudications. It must be conceded, as a general proposition, the state courts hold the suits do not abate, whether the duty be a personal one or one to be performed on behalf of a corporation whose representative the individual may be against whom the suit is brought. We are not particularly concerned with this very close and narrow distinction between the cases, since, according to our *406 view, whether the suits do or do not abate, a judgment may not be rendered against the successor, unless in some way he is brought within the jurisdiction of the court and have an opportunity to perform the act which he will be ultimately adjudged to do if the judgment go against him. We think the present case falls very clearly within the distinction recognized in the 103 United States, and the act to be performed is to be done by the treasurer as the representative of the municipality, and the suit is really, though indirectly, one to compel the city authorities to perform the contract into which they entered. The treasurer is the person who is the custodian of the fund, and who can he directly reached by the process and be compelled to pay the money to the individuals entitled to it. It is the only substantial relief which the petitioners can obtain. The case, therefore, eomes very clearly within nearly all the authorities on this question. The only remaining inquiry is whether it was essential to make Branson a party to the proceedings in order to obtain a judgment against him. We cannot conclude otherwise. No argument db inconvenienfd can be drawn from the situation. The suit was begun during the continuance of Fox’s term, but the actual trial was had after he had gone out of office and after his successor had come into the possession of the funds sought to be reached by the proceeding. All these facts appeared on the trial and were probably known to the litigants before the case was actually heard. The possibility of issuing a second alternative writ and bringing Branson in was clearly open to the petitioners. To pursue this course would neither have deprived them of a remedy, nor resulted in any substantial delay. Under the existing circumstances, the court would have ordered him to answer instanter and the case would have proceeded to judgment with all reasonable and convenient speed. A critical examination of the authorities which have been cited shows an almost universal admission of the propriety and the necessity of pursuing this course in cases of this description. High’s Extraordinary Legal Remedies, sec. 440, et seq.; Mechem on Public Officers, *407 sec. 940; Dillon’s Mun. Corp., vol. 2, sec. 884; The People ex rel. v. The Supervisor, 100 Ill. 332 ; Hardee v. Gibbs, 50 Miss. 802; Lindsley v. Auditor, 3 Bush, 231; State’s Attorney v. Selectmen of Branford, 59 Conn. 402.
Many other cases might be referred to in which would be found expressions concurring with the general principle involved in the present decision. It has seldom happened, however, that the decisions have turned on the particular proposition respecting the necessity to make the successor a party in order to obtain a valid judgment. The necessity is recognized in many cases which hold the suit does not abate by the expiration of the term of office, though they only apparently refer to the continuance of the proceedings against the successors who are charged with the duty. It might almost be called a construction established by concession rather than by specific judgment on the especial point. Since all courts agree that no person may be bound, save him against whom process has actually or constructively run, we are bound to hold it necessaiy to bring the successor in, in order to compel him to perform the judgment by paying over the money. The. duty is a personal one, operative only on the person then holding the office, and the judgment must be entered against him to be enforceable by ultimate proceedings. It logically follows there can be no such thing as a constructive service on which to base a judgment which the successor can be compelled to perform by proceedings in conte'mpt or otherwise.
The judgment is likewise irregular in having been entered against Fox as well as against Branson, the successor. We do not hold some judgment might not be properly entered against Fox on the showing that he had refused the demand, declined to pay the money, and had compelled the petitioners to incur costs in the establishment of their rights. This we do not decide. We simply hold no judgment directing him to pay over the money could properly be entered against him. It would be a vain order, which it would be impossible for him to execute, and therefore the judgment in that form *408 should not go against him. People ex rel. v. Spruance, 8 Colo. 319.
For these reasons we conclude there was error in the judgment, and it must be reversed and sent back for further proceedings in conformity with this opinion.

Reversed.